

**SIGNED this 10th day of September, 2015**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

                                              No.  1:13-bk-13184 SDR
                                              Chapter 7

ELBERT DONALD WALKER and
RHONDA PITTS WALKER,

        Debtor;

JAMES R. PARIS, TRUSTEE
            Plaintiff

v

                                              Adversary Proceeding
                                              No.  1:14-ap-1051 SDR

CINDY WALKER,
              Defendant.

## MEMORANDUM

On May 8, 2015, the court entered an order granting in part and denying in part the

motion for summary judgment filed by James R. Paris, the plaintiff and duly appointed trustee in

the chapter 7 joint case of Elbert ("Don") and Rhonda Walker.  On May 22, 2015, the defendant

Cindy Walker, the debtors' daughter[1], filed a motion asking the court to reconsider its ruling in

the order on the issue of the insolvency of debtor Rhonda Walker. There is no request to

reconsider the insolvency of Donald Walker. The parties agree that he is insolvent.

The court has considered the motion to reconsider and the response and has determined

that the motion to reconsider will be denied for the reasons stated below.

## I.  Jurisdiction

This court has subject matter jurisdiction over this bankruptcy case and this adversary

proceeding. 28 U.S.C. § 1334(a) and (b). The case and all proceedings arising under Title 11 or

arising in or related to a case under Title 11 have been referred to this court. 28 U.S.C. § 157(a);

Standing Order entered July 11, 1984 (E.D. Tenn.). The parties have agreed this is a core

proceeding. [Scheduling Order dated September 3, 2014, Para.1 (Doc. No. 11).] 11 U.S.C. §

157(b)(2)(H).

## II.  Analysis

**A.**  Standards for Reconsideration

Motions for reconsideration are construed as motions to alter or amend judgment under

F.R.C.P. 59, made applicable to bankruptcy proceedings by Rule 9023 of the Federal Rules of

Bankruptcy Procedure.

> A court may grant a motion to alter or amend judgment only if there was "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir.2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999)).

---

[1] For clarity, the court will refer to Cindy Walker as the defendant and the debtor Rhonda Walker as Mrs. Walker.

*Am. Civil Liberties Union of Kentucky v. McCreary Cnty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010).

> "Motions for reconsideration are 'not an opportunity to re-argue a case' and should not be used by the parties to 'raise arguments which could, and should, have been made before judgment issued.' " *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998); *FDIC v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir.1992).

*In re SCBA Liquidation, Inc.*, 485 B.R. 153, 159-60 (Bankr. W.D. Mich. 2012).

> The burden is on the party seeking reconsideration to demonstrate the existence of manifest errors of fact or law. *Hager v. Paul Revere Life Ins. Co.,* 489 F.Supp. 317, 321 (E.D.Tenn.1977), *aff'd. without opinion,* 615 F.2d 1360 (6th Cir.1980); *Solar Laboratories v. Cincinnati Advertising Products Co.,* 34 F.Supp. 783 (S.D.Ohio), *appeal dismissed,* 116 F.2d 497 (6th Cir.1940) (motion for reconsideration not to be granted unless the court manifestly misapprehended the law or the facts).

*In re Watson*, 102 B.R. 112, 113 (Bankr. S.D. Ohio 1989).

B. Defendant's Grounds for Reconsideration.

The defendant contends that "additional reference to the record is necessary to prevent manifest injustice." [Memorandum in Support of Motion to Reconsider 1 (Doc. No. 30) ("Supporting Memorandum").] The defendant contends that the court erred in concluding that the Trustee, as the movant in a motion for summary judgment, had carried his burden of proof on the issue of Mrs. Walker's insolvency at the time the transfer occurred. [Supporting Memorandum at 3.] She also contends that the court incorrectly found that there was no issue of fact apparent from the evidence in the record. She cites Mrs. Walker's testimony in her affidavit about the effect of the success of her litigation against First Bank and notes what she characterizes as ambiguities in the schedules as evidence of factual disputes which the court did not consider. [Supporting Memorandum at 4.] Finally, the defendant contends that in order to prevent manifest injustice, she and Mrs. Walker should be given another chance to address the solvency issue because (a) the court had represented an intention to defer ruling on Mrs.

Walker's solvency while the state court in which Mrs. Walker's claims against First Bank were pending reached a conclusion and (b) the court's ruling effectively substantively consolidated the bankruptcy cases of Mr. and Mrs. Walker without Mrs. Walker's participation. The court will address each contention in turn.

1. *The Trustee carried his burden of proof and the defendant failed to establish the presence of a genuine issue.*

The defendant states that the Trustee has the burden of proof on the issue of insolvency at the time of the transfer and that "she should not have to bear either the burden of proof or persuasion on the insolvency issue." [Supporting Memorandum at 3.] The court agrees that the defendant correctly states the law regarding the burden of proof. [*See* Supporting Memorandum at 3 (citing *In re Paul*, 446 B.R. 272, 276 (Bankr. App. Panel 8th Cir. 2011), *aff'd* 444 Fed.Appx. 927 (8th Cir. 2011)). *In re Gabor*, 280 B.R. 149, 155 (Bankr. N.D. Ohio 2002).] The court also finds that the Trustee satisfied that burden.

In this case the Trustee's affidavit in support of his motion for summary judgment stated

"As Chapter 7 Trustee, I am familiar with the value of the Debtors' assets and the extent of their liabilities in May and June, 2013. Based on a review of their records, the petition and my knowledge of the net values of their properties, the Debtors were balance sheet insolvent by at least $10,000,000 on May 17, 2013. This condition did not change materially from then to the petition date."

[Trustee's Affidavit in Support of Motion for Summary Judgment 4, para. 20 (Doc. No.14, Ex. 1).] Although the Trustee did not attach copies of the records on which he relied, the petition, and the accompanying schedules filed in the case, show that the debtors' joint debts exceeded their joint liabilities. [Amended Chapter 7 Voluntary Petition (Doc. No. 192), Amended Schedules A, B, C, D, F (Doc. No. 29, 88, 194-96).] The schedules do not show any individual assets of Mrs. Walker's which were not claimed as exempt, which means she has no individual assets that are includable in the calculation of solvency. 11 U.S.C. § 101(32)(A)(ii). As to debts,

4

all debts shown on Schedules D were designated as joint except two which were shown as Mrs.

Walker's alone: one in the amount of $133,000 which was secured by a house located on 8711

Standifer Gap and another which was secured by new construction on Fox Ridge Dr. [Schedule

D (Doc. No. 27 and 88).] All debts shown on Schedule F were shown as joint. [Schedule F (Doc.

No. 29).]

      The defendant cites *In re Paul* for the proposition that "the schedules and SOFA are not

determinative of the Debtor's assets and financial condition at the times of the transfers." *In re*

*Paul*, 446 B.R. 272, 276 (B.A.P. 8th Cir. 2011), aff'd 444 Fed. Appx. 927 (8th Cir. 2011). That

case involved an avoidance action against the debtor's sister and step-mother brought by a

trustee under the strong arm provisions of the Code to recover fraudulent transfers of a mobile

home and real property that occurred several months prior to filing. The court found that "relying

solely on the schedules and SOFA as evidence of [the debtor's] financial condition nine and

sixteen months previous necessarily requires speculation." *Id.* at *275. The court also noted the

income earned by the debtor during this period that made the possibility of a change of

circumstances possible. The court finds that this case is distinguishable. Here, the Trustee

testified he considered more than just the petition to conclude that the debtors were insolvent on

the date of the transfer and that nothing had changed between that date and the date of the

petition. The defendant did not come forward with any evidence to contradict that statement

other than the First Bank issue discussed in detail below.

      In opposition to the Trustee's affidavit, the defendant offered only Mrs. Walker's

affidavit regarding Mrs. Walker's solvency at the time of the transfer. In her memorandum in

response to the motion for summary judgment, she did not contend that Mrs. Walker's financial

condition had substantially changed between the transfer date of May 17, 2013, and the filing

date of June 28, 2013, or that the Trustee's statement was inadmissible or inaccurate. [Response

to Plaintiff's Motion for Summary Judgment (Doc. No. 18) ("Response").] She framed the issue

of solvency as one which was dependent upon Mrs. Walker's success in a state court lawsuit

with First Bank. She stated in the Response that

> "There is also a genuine fact issue regarding the insolvency of one of the Debtors,
> Rhonda Walker, which prohibits an award of summary judgment. Cindy Walker raised
> this contention in her answer, and there is pending litigation in the Chancery Court of
> Hamilton County, Tennessee in which Rhonda Walker contests that she is indebted to
> **one** of the creditors in this matter. A ruling in her favor will apparently make her solvent
> and calls into question the conclusion that any funds provided by her towards the
> purchases were transferred fraudulently."

[Response at 2 (Doc. No. 18) (emphasis added).] While the defendant states that there is a

genuine issue of fact, she explains that the issue is related to whether Mrs. Walker is indebted to

one creditor and how that liability would apparently change Mrs. Walker's financial status.

　　　　As evidence of this contention, the defendant offered Mrs. Walker's affidavit. Mrs.

Walker's testimony in her affidavit in opposition to the motion for summary judgment refers to

the same dispute. She does not raise additional issues of fact. In Mrs. Walker's affidavit, she

testifies that an issue of fact exists about "whether I am liable on a particular debt allegedly owed

to First Bank of over six million dollars. I have raised a defense and a counterclaim to the

guaranty I signed at the demand of the bank. . . . If I am successful, I aver that I am insolvent

(sic) at all." [Affidavit of Rhonda Walker 3, para.8 (Doc. No. 18-2)]  There is no mention of any

other obligation which she disputes she owes or any other asset of hers which was undervalued

by the Trustee in his calculation.

　　　　When the court considered this testimony in the light most favorable to the defendant, it

turned to the schedules to determine how much "over six million dollars" was owed to First

Bank. Schedule F reflected a total of debts owed to First Bank of $6,708,935.07 [*In re Don and*

*Rhonda Walker*, Case no. 1:13-bk-13184, Doc. No. 29, Schedule F, pp. 2-3.] The statements in the schedules are admissions by the debtors which the court may consider. *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001), *In re Samson*, 392 B.R. 724, 733 (Bankr. N.D. Ohio 2008). The defendant does not ask the court to reconsider the number it used for liability to First Bank of $6,708,935.07. The exclusion of this liability to First Bank from the Trustee's insolvency calculation of $10,000,000 did not make Mrs. Walker's solvency apparent. It only reduced the degree of her insolvency.[2]

A basis for a broader factual dispute cannot be found in either the Statement of Undisputed Facts or in the defendant's response. The Trustee asserted that "the Debtors were balance sheet insolvent on May 17, 2013 and thereafter up until the petition date. (Affidavit of Paris at Paragraph 19 (sic))." [Statement of Undisputed Material Facts 3, para. 13 (Doc. No. 14-3).] The defendant's response stated that the fact was "[d]isputed to the extent that Rhonda Walker avers that she is not insolvent; See Affidavit of Rhonda Walker at Paragraph 8." [Responses of Cindy Walker to the Plaintiff's Statement of Undisputed Facts and Statement of Additional Facts, Para. 13 at 4. (Doc. No. 18-1).] Paragraph 8 is the same paragraph previously discussed related to the "particular debt allegedly owed to First Bank." [Affidavit of Rhonda Walker 3, para.8 (Doc. No. 18-2).]

The court can find only one statement in the defendant's Response to the Motion for Summary Judgment that does not relate to the First Bank dispute. The defendant concludes her argument regarding the issue of insolvency with the additional statement that "to the best of [her]

---

[2]     The court could have stopped at that point but it proceeded to consider the amended schedules and noted that Schedule A included a number of properties with a value of "unknown." The addition of the value of these properties from Schedule A further reduced the level of insolvency to the $1,500,000 figure the court references in its memorandum. The defendant now asks the court to include or delete other assets and liabilities listed in the schedules which if changed would alter the level of Mrs. Walker's insolvency. The issue of the court's consideration of the contents of the schedules is discussed in more detail in section II.B.2. below.

knowledge no ruling of this court has been made regarding any division of debts and assets that may exist between the Debtors." [Supporting Memorandum at 8.] She finally contends that any ruling, presumably about insolvency, would be "premature." [*Id.*] These are the only statements made by the defendant that relate to what value Mrs. Walker's assets may have or what debts Mrs. Walker may owe. She offers no proof to support these statements. There is nothing in the affidavit of the defendant, Brent Walker, Janice Long (the accountant for Walker Rentals) or Mrs. Walker related to asset ownership by Mrs. Walker, asset valuation or other disputed debts. She does not offer any challenge to the admissibility of the Trustee's testimony regarding $10,000,000 other than to contend that the First Bank debt should be removed. Because the defendant did not challenge the Trustee's number except as to the First Bank debt, there was no issue of fact regarding ownership of assets or the division of other liabilities for the court to consider. Further the defendant did not content that there were facts unavailable to her to justify her opposition to the Motion for Summary Judgment. She did not argue the ruling should be delayed under Fed.R.Bankr.P. 7056, which makes F.R.C.P. 56(d) applicable to bankruptcy proceedings.

The defendant's motion to reconsider now contends that she should not be "required to decipher the division of the Debtors' assets and liabilities in order to raise a genuine issue of fact." [Supporting Memorandum at 5.] Rule 56 does not require her to decipher the division of the Debtor's assets and liabilities. It does require her to support her opposition by citation to particular parts of the record or to show that the adverse party cannot produce admissible evidence to support that fact. F.R.C. P. 56(c)(1)(A) and (B). When faced with the Trustee's affidavit regarding his review of the records, including the petition, his testimony that he found no change in the financial condition between the transfer date and the filing date, and his

8

conclusion that Mrs. Walker was insolvent at the time of transfer, the defendant could have

either challenged the admissibility of that evidence or disputed its conclusion. She took the

second option, but did so in a very specific and limited manner. The court concluded that

reducing insolvency of $10,000,000 by almost $7,000,000 still left Mrs. Walker insolvent.

    *2.  Failure to consider other disputes the debtor may have with the contents of the
Schedules which were not raised prior to the judgment is not manifest injustice.*

    In its memorandum addressing the insolvency of Mrs. Walker, the court provided the

following analysis of the schedules:

> This statement by Mrs. Walker does not raise a genuine issue of fact. Taking the
> statement in the light most favorable to Mrs. Walker, the court will remove from the total
> liabilities attributable to FirstBank scheduled by the Debtors. Based on the amounts listed
> in the most recent version of Schedule F, the amount listed for First Bank is
> $6,708,935.07. [Bankr. Case No. 13-13184, Doc. No. 29, pp. 2-3]. The total of unsecured
> debts was $11,188,218.54. *Id.* at p. 6. Without the FirstBank debt, there remains
> $4,479,283.47 of unsecured debt. Schedule D reflects additional secured debt of
> $2,619,557, for total liabilities, without FirstBank, of $7,098,840.47.
>
>     On the asset side, in October of 2013, the Debtors amended their schedules to
> reflect real property values of $2,458,630. [Bankr. Case No. 13-13184, Doc. No. 194].
> The list also included fifteen properties whose value was listed as "unknown," and their
> value was not included in the totals, but a collective value of $1,505,500 was given in the
> description for fourteen of the properties based on their tax appraisal. The fifteenth
> property was 515 Airport Road which was "appraised in 2013" but no value was given.
> [Bankr. Case No. 13-13184, Amended Schedule A, Doc. No. 194, p. 1]. In 2014, 513 and
> 515 Airport Road were sold for $475,000. [Bankr. Case No. 13-13184, Doc. Nos. 437,
> 440]. For purposes of this motion, the court will attribute the entire sales price to 515
> Airport Road. The sum of the stated values on Schedule A, plus values derived from the
> tax appraisal plus the sales proceeds brings the total asset value for real property to
> $4,439,130.
>
>     The value listed for personal property on Schedule B was $1,134,120.76. Adding
> that to the real property value brings total asset value to $5,573,250.76. When the asset
> value is compared to liabilities without FirstBank of $7,098,840.47, Mrs. Walker's joint
> and individual liabilities are approximately $1,500,000 more than the assets.

[Memorandum at 20-21.]

    The court noted one shortcoming[3] in the schedules in its opinion when it added the value

---

[3] In his memorandum in response to the motion to reconsider, the Trustee calls to the court's attention that the court
failed to exclude the value of the debtors' exempted property which totals $368,282.31 from the asset value it used

of a number of properties whose value was listed on Schedule A as "unknown."

The court used the schedules to confirm the insolvency. In its memorandum, it further reduced the level of insolvency by another $1,500,000 because no value had been included for some real properties despite the inclusion of a tax appraisal in the description of the properties. [Schedule A 1, Doc. No. 194.] Because the court opened that door, the defendant now contends that the court reconsider other contents of the schedules. The defendant contends that there are "ambiguities" in the schedules that will raise issues of fact regarding Mrs. Walker's insolvency. [Supporting Memorandum at 4.] The ambiguities are not identified. [*Id.*] The defendant also contends that certain schedules reflect factual disputes regarding which assets and liabilities are attributable only to Don Walker. [*Id.*] When the court reviews these examples, the court does not find evidence of these factual disputes regarding liability for the debts on the face of the schedules.

Of the three debts which the defendant contends are "attributable only to Mr. Walker," the first is owed to Northwest Georgia Bank. There are two entries on page 5 of Schedule F showing two loans totaling $944,252 that the defendant now contends should not be included in Mrs. Walker's liabilities. She contends that these loans are for "D&M" as borrower. [*In re Don and Rhonda Walker*, Case No.1:13-bk-3184 (Doc. No. 29).] The court finds this to be a mischaracterization of the information contained in the description of the debt. The first entry actually states "Business- D&M All American Storage Mini Warehouses" under the column headed "Date Claim was incurred and consideration for claim. If claim is subject to set off, so state." There is a second obligation to Northwest Georgia Bank listed on Schedule F with the

---

in its discussion. Schedule C – Property Claimed As Exempt. (In re Don and Rhonda Walker, Case no. 1:13-bk-13184 (Doc. No. 196)). [Trustee's Response to Motion to Reconsider or Alter or Amend Order Granting Partial Summary Judgment 3 (Doc. No. 32).] The defendant does not ask that this correction be considered.

same notations except the "consideration for claim" is "Business – D&M Goodwin Rd

Collateral." The reference to D&M is contained in the consideration column. Both debts are

marked with a "J" indicating that they are the joint debts of a husband and wife who have filed a

case which is being jointly administered. Schedule F Instructions, Official Form 6F. There is no

indication that the claims are contingent, unliquidated or disputed. [*In re Don and Rhonda

Walker*, Case No.1:13-bk-3184 (Doc. No. 29).] D &M is not listed as codebtor of either Mr. or

Mrs. Walker. [Schedule H (*In re Don and Rhonda Walker*, Case No.1:13-bk-3184 (Doc. No.

31).]

 The second debt is owed to First Tennessee Bank. Schedule F shows two debts to First

Tennessee Bank which total $221,466.50 designated as jointly owed. Under the "consideration

for claim" column, S&W Business is listed with an indication of an address for a piece of

property and a value designation. S&W Properties is listed in Schedule B as jointly owned and

having a value of $0.00. S&W is not listed as a codebtor in the debtor's Schedule H.

 The third debt is to Capital Bank. Again, the entry on which the defendant relies does not

state that S&W is the borrower. It reflects that the debtors have joint liability on the debt to

Capital Bank which is stated to be $974,632.87. The debt is not designated as contingent. S&W

as indicated above is not listed as a co-obligor and S& W is listed in Schedule B as jointly owned

with a value of $0.00. Under the consideration for claim column, there is the statement

"Business- S&W Real Estate, See Attached Exhibit A."

 There is no Exhibit A attached to Schedule F but there is one attached to Schedule B

which describes the real estate held by S&W, a jointly owned entity listed with the debtors'

personal property on Schedule B with a value of $0.00. [Schedule B, Exhibits A and B (*In re

Don and Rhonda Walker*, Case No.1:13-bk-3184 (Doc. No. 195).] The exhibits attached to

Schedule B contain a list of properties that the debtors place under the headings "SW/Smith

Walker" and "D & M/ Swanson Hollow Development- Partnership". [*Id.*] If those entities are

liable, and if those properties were used to satisfy the liabilities of those entities and if the

debtors' obligations should be reduced because their liabilities are contingent, then the defendant

should have provided proof that those entities are liable on those debts and that those debts have

been secured by those properties and the obligations are contingent in order to show that the

schedules are inaccurate and thereby create an issue of fact. The defendant did not challenge the

schedules or the Trustee's conclusion on this basis.

 On the other side of Mrs. Walker's balance sheet, the defendant contends that Schedule

A "does not sufficiently determine the value of [certain assets listed on Schedule A as having an

"unknown" value] at the time of the alleged transfers." [Supporting Memorandum at 4.] The

Trustee did not specifically reference in his affidavit which assets and liabilities in Schedule A, if

any, he included or what values he had allocated to them. To the extent that it was an error for

the court to include a value for the properties listed on Schedule A with an "unknown" value, the

court does not find anything in the schedules that would have indicated a higher value should

have been used or that the properties' values dropped in the six weeks between the transfer date

and the filing of the debtors' bankruptcy. The defendant did not previously raise an asset

valuation issue.

 If other properties owned by third parties are included in the calculation of insolvency, if

assets are increased, or debts are reduced because of the likelihood that they will be satisfied by

other entities or from properties owned by other parties, the court recognizes that a calculation of

insolvency would be affected. These contentions, if they had been made prior to the judgment,

and if they had been supported by admissible evidence, would have raised a genuine issue of

fact. The problem with the defendant's request to consider them now is that none of these arguments were made prior to the entry of the court's judgment and many of these contentions conflict with the contents of the sworn schedules filed in the case. To the extent that the defendant contends that there are problems with the contents of the schedules that have been filed for almost two years, the defendant has not alleged that these facts are newly discovered evidence that was previously unavailable. For that reason, the court does not find that it is manifest injustice not to consider these new arguments that the schedules are ambiguous as to Mrs. Walker's liability on those debts.  As such, the court is not required to consider them. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc*., 978 F.2d 10, 16 (1st Cir. 1992) ("*Rule 59(e)* motions are aimed at reconsideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued. Motions under *Rule 59(e)* must either clearly establish a manifest error of law or must present newly discovered evidence." (internal citations and quotation marks omitted) (emphasis in original))).

With respect to the court's use of the schedules, the defendant cites an error of law. She argues that the court incorrectly relied on a case which is distinguishable from this case. The court relied on the case of *Hagan v. Goldstein (In re Goldstein)*, 428 B.R. 733, 736 (Bankr. W.D. Mich. 2010) in which there was no dispute about the accuracy of the information in the bankruptcy schedules which showed the debtor to be insolvent. There was also no dispute in *In re Hagan* that the debtor was insolvent at the time of the transfer. Until the defendant filed the Motion to Reconsider, the court was unaware that there was a dispute regarding the contents of the debtors' schedules other than amounts owed to First Bank.  The court does not find that its application of *In re Hagan* is manifest error under the circumstances of this case.

3. *The Court did not previously determine that it would abstain from a determination of insolvency.*

Another issue the defendant raises is that the court previously deferred ruling on the issue of Mrs. Walker's objections to the claim 3, 4, and 5 of First Bank, and, therefore, impliedly ruled that it would abstain from determining her insolvency until that matter was concluded.  The court finds that this is a misinterpretation of the court's order entered on November 17, 2014 in the case of *In re Donald and Rhonda Walker*, Case no. 1:13-bk-13184-SDR. The objection filed by Mrs. Walker addresses her solvency in the context of her standing to pursue an objection to a claim. [R. Walker's Objection to Claims 3, 4, and 5 2-3, Para. 11 (Doc. No. 392).] Filing an objection is the duty of the chapter 7 trustee unless the debtor can show that she is solvent. 11 U.S.C. § 704(a)(5); *In re I&F Corp.*, 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998). The agreed order prepared by Mrs. Walker and First Bank stated that Mrs. Walker "may have standing to bring the objection due to the possibility of [Mrs. Walker's] estate being solvent." [Order filed November 17, 2014 (Doc. No 523).] The agreed order deferred ruling on her standing to file the objection until the merits of her claims against First Bank could be pursued and left the merits of her defenses to the First Bank claims to the state court where the action had been pending prior to the bankruptcy filing pursuant to 28 U.S.C. § 1334(c)(2). The court did not state that it was abstaining from ruling on Mrs. Walker's solvency in any other context until the state litigation was concluded. The agreed order was prepared by and signed by counsel for the debtor and counsel for the bank. Neither the Trustee nor this defendant was a party to that order.  To the extent that the defendant now believes that reference to the "possibility" that Mrs. Walker was solvent in the context of standing in no order to which the defendant was not a party was a decision by this court to abstain from deciding that issue in her case, she failed to make that argument in her Response. In fact, her conduct indicates that she knew this was an issue because

14

she specifically addressed the element of insolvency in her Response and obtained her mother's affidavit in support. The court will not consider this new issue after the judgment has been issued.  As the defendant noted in her brief "a motion for reconsideration . . . should not be used to raise issues which could and should have been raised before the judgment entered." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F. 3d 367, 374 (6th Cir. 1998).

> 4.  *The Court's ruling does not effectively consolidate Mrs. Walker's case with her husband's case.*

As further evidence of manifest injustice, the defendant argues that Mrs. Walker is deprived of her opportunity to take on the issue of her solvency if the ruling is not reconsidered; and that the court has substantively consolidated the cases by holding Mrs. Walker responsible for Mr. Walker's debts.  As to Mrs. Walker's opportunity to address her solvency as of May 17, 2013, Mrs. Walker had the opportunity and did so in her affidavit. Given that both the defendant and Mrs. Walker failed to raise any other issue with the Trustee's proof other than a dispute with First Bank, the court's refusal to allow the defendant now to argue that Mrs. Walker's debts are not really joint, or that Mrs. Walker denies her liability to more than one creditor is not manifestly unjust. *Matter of No-Am Corp.*, 223 B.R 512, 514 (Bankr. W.D. Mich. 1998).

As to the court's ruling effectively consolidating Mr. and Mrs. Walker's cases, the court has made no ruling on substantive consolidation. The Trustee acknowledges this is his response to the Motion to Reconsider. [Trustee's Response at 4 (Doc. No.32).] The Trustee has filed a motion to consolidate Mr. and Mrs. Walker's cases, but the Trustee will have to prove the elements required in that matter in order to obtain that relief. As to the allegation that this ruling makes her responsible for Mr. Walker's debts, the court does not have the specific information as to which debts the Trustee included in his calculation of her insolvency, and the defendant did not raise the issue that the Trustee had included Mr. Walker's sole obligations in his calculation.

Consequently, these arguments do not lead the court to find that manifest injustice will result from the court's judgment.

### III. Conclusion

The court finds that the defendant has not carried her burden to show that the court manifestly misapprehended the law or the facts. For these reasons, the court will deny the motion to reconsider.

The court will enter a separate order.

###